## BAILEY v. WILLEFORD.

(Circuit Court, W. D. North Carolina. November 30, 1903.)

### No. 48.

**1. FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP—JUDGMENT—INJUNCTION—CONSPIRACY.**

Defendant was sued in a state court for enticing plaintiff's daughter, and, though entitled to remove the cause to the federal courts, he answered in the state court, consented to a trial, and after verdict against him made a motion to set the same aside and for a new trial. These being denied, he appealed to the state Supreme Court, where the judgment was affirmed. Thereafter defendant obtained an affidavit from plaintiff's daughter that her testimony had been false, and that she had been coerced by her father to testify as she did. On this and other evidence defendant applied in the state court to set aside the judgment for fraud and perjury, and appealed from an order denying his motion, and brought suit in equity in the state court to set the judgment aside. He also moved the state court to restrain execution, which was denied, and appealed from such order to the state Supreme Court, which appeals were pending when he filed a bill for an injunction in the federal court to restrain the enforcement of the judgment on the ground that it was obtained by fraud, conspiracy, and perjury, alleging the same facts as had been presented to the state court in the previous proceedings for a new trial, etc. *Held*, that defendant, having elected to litigate the whole matter in the state courts, and having fully presented his entire case to those courts, the federal court would not take jurisdiction.

In Equity.

Cothran, Dean & Cothran and Adams, Jerome & Armfield, for complainant.

Redwine & Stack, for respondent.

SIMONTON, Circuit Judge. This case comes up on a rule to show cause why an injunction do not issue. In order to a clear understanding of the case, a full statement is necessary. Thomas F. Willeford, the defendant in this action, sued P. S. Bailey, the present complainant, in the superior court of Union county, in the state of North Carolina. The cause of action was the enticing Willie Willeford, the 17 year old daughter of Willeford, to leave her home, harboring her in South Carolina, and debauching her. The summons was served on 13th October, 1902, and, Bailey being a citizen and resident of South Carolina, under the practice prevailing in North Carolina he was made to give bail in the sum of $6,000, having as one of his sureties W. C. Heath. The defendant to that action having answered, and the cause being at issue, it was tried at the October term of the court for Union county before Judge W. S. O. B. Robinson and a jury, and a verdict was entered for the plaintiff in the sum of $5,000. At that term Bailey made a motion to set aside the verdict and for a new trial, which motion was refused. The case was then carried by appeal to the Supreme Court of North Carolina (43 S. E. 928), and on 21st April, 1903, that court filed an opinion affirming the judgment below. Bailey entered a petition for rehearing the cause before the Supreme Court, and the prayer of the petition was refused. When the cause was sent down from the Supreme

¶ 1. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

Court, Bailey entered a motion before his honor C. M. Cooke in the superior court to set aside the verdict and judgment rendered therein on the ground that the same were obtained by fraud and perjury. The motion was based upon the ground of newly discovered evidence, and was sustained by many affidavits. It was resisted, and was heard by the court on the affidavits presented on both sides. The motion was refused. Bailey thereupon entered an appeal to the Supreme Court from this decree of Judge Cooke, which appeal has not yet been disposed of. Besides this, on 9th May, 1903, Bailey instituted proceedings in equity in the superior court of Union county, a court having full jurisdiction in deciding principles of equity, the purpose of which proceedings was to set aside this same judgment on the ground that it was procured by fraud and perjury. On 24th July, 1903, he gave notice of a motion before Judge Cooke, a judge of that court, for an injunction to restrain execution on that judgment. The hearing of this motion was continued until 8th August, and on that day was heard on the verified complaint, answer, affidavits, and the oral testimony of Mr. Jerome, and argument of counsel on both sides. The judge hearing the motion refused to grant the injunction. Bailey filed exceptions to this decree, and appealed therefrom to the Supreme Court of North Carolina. This appeal has not been heard, and, indeed, has been practically abandoned, although the record has been made up for the appeal. When Judge Cooke refused to set aside the judgment and execution and Bailey appealed from his decree he gave a stay bond, as it is called, superseding the execution. Notwithstanding this the sheriff of Union county levied upon property of W. C. Heath, one of his sureties, and advertised for sale on first Monday of October, 1903. Thereupon P. S. Bailey filed his bill of complaint in this court, seeking an injunction against Thomas F. Willeford commanding him not to enforce the said judgment. This bill, after setting forth the suit of Willeford against him, its trial, and the verdict thereon, and the levy of the execution on the property of W. C. Heath, one of his sureties, alleges: That this verdict was based entirely on the testimony of Willie Willeford, the daughter of the plaintiff in that action, and beside that there was no other evidence offered to sustain the action. That after the rendition of the verdict and the entry of judgment, to wit, 29th April, 1903, the complainant received a letter written from Atlanta, Ga., by said Willie Willeford, the substance of which was that her testimony on that trial was false; that she regretted it, and that she would do anything in her power to remedy the wrong. The letter is set out in full in the bill. That on receipt of said letter one of his counsel went to Atlanta, saw Willie Willeford, and, after conversation with her, took her affidavit, in which she distinctly and positively swore that her testimony at the trial was false in every material respect; that prior to the trial she had told her father what the facts were, but that, being pressed and persuaded by him, and induced by a promise of one-half of the verdict, she went on the stand, and gave the false testimony. The bill avers the entire falsehood of this testimony at the trial, and insists on the innocence of complainant of the charge, and also that the defendant, Willeford, is hopelessly insolvent. The bill

then alleges that this judgment complained of was procured by the fraud of Thomas F. Willeford, who intended to cheat and defraud complainant, and, using the process of the court for that fraudulent purpose, procured his daughter, Willie, to swear falsely—all this being the result of a conspiracy between Thomas F. Willeford, his wife, and his said daughter, Willie; that, so conspiring, they concocted and created the alleged cause of action, which rested solely on the agreement of said Willie to commit the perjury, which agreement she carried out, the result being the said verdict and judgment. The prayer of the bill is for a writ of injunction restraining and enjoining the defendant from enforcing the execution or executions issued upon said judgment until the further order and decree of this court, and that it be adjudged that said judgment was obtained by collusion, fraud, conspiracy, and perjury, and be canceled.

Upon the filing of the verified bill of complaint, a rule was issued against Thomas F. Willeford calling upon him to show cause why the injunction do not issue as prayed for, accompanied by the usual restraining order. The defendant appeared on the day fixed by the rule, and has filed his answer, accompanied by many affidavits. The rule has been heard on the verified bill of complaint with affidavits supporting it, and on the verified answer with affidavits and certified copies of records. It appears from these papers that Willie Willeford did make the affidavit stated in the bill in which she declares that she did commit the perjury charged, and there are several affidavits showing the circumstances under which she took this affidavit. There are also affidavits tending to show that Willeford had reason to believe that his daughter did not tell the truth at the trial. On the other hand, Willie Willeford files her affidavit in this case, denying that she realized the contents of the affidavit made in Atlanta, declaring that the statements made in that affidavit are false; averring and insisting that she told the truth on the stand in the case in the superior court, and that that testimony was and is true. The most important part of the testimony in response to the rule is the certified copies of records of the courts of North Carolina. From them these facts appear: That the present complainant, a citizen of the state of South Carolina, was sued in the superior court of Union county, N. C.; that he appeared, filed his answer, and went to trial, introducing a number of witnesses in his own behalf; that the jury found a verdict against him; that he moved for a new trial, and that, his motion having been refused, he appealed to the Supreme Court; that his appeal was heard, and the judgment below affirmed; that he prayed a rehearing, and it was refused; that, the cause having been remitted to the superior court, he moved to set aside the judgment because of false and perjured testimony, and his motion was refused; that, not content with this, he instituted equitable proceedings in the superior court seeking an injunction against this judgment because it was obtained by fraud and perjury (evidently fraud upon the part of Willeford and his daughter, and her perjury); that on presenting his motion he introduced the same affidavit of Willie Willeford as he recites in this bill, corroborating it by the same affidavits he has introduced here, and was met by counter affidavits the

same as introduced here; that after full hearing the superior court refused his motion, and that he appealed therefrom to the Supreme Court, which appeal has not yet been heard.

Unless there is something in the present bill calling imperatively upon this court to interfere, the above statement would seem to conclude the case. The complainant comes now into this court to correct, as his counsel in argument say, an injustice done him in the state court. His issue was tried before a judge of the highest character, instinctively a just man. This judge presided at the trial of the case, and on the motion for a new trial reviewed it, and refused a new trial. It was then carried to the Supreme Court. That court, under the law of North Carolina, can grant a new trial on errors of fact. The verdict and judgment below were affirmed by this tribunal, whose impartiality, wisdom, and integrity cannot be questioned. It came again into the superior court, and was again heard on the ground that the verdict was obtained by fraud and perjury, and the verdict and judgment were sustained. The record discloses not even a hint that this action of the court was otherwise than that which all know it to be, the calm judgment of a just and unprejudiced judge. The aid, then, of a court of equity was sought on a case almost precisely like that made in this court now, and this aid was refused. The complainant is too late in seeking the aid of this court from supposed injustice in the state court. He could have removed his case at its inception into this court because of diversity of citizenship. If he had any reason to fear prejudice or local influence, he could remove it into this court at any time before trial. He deliberately selected his tribunal. He made all his defenses in it. He took every chance for a successful result. Having experimented in the state court, he cannot repeat his experiment here. See Forsyth v. Hammond, 166 U. S. 506, 17 Sup. Ct. 665, 41 L. Ed. 1095.

It is earnestly pressed, however, that there has been disclosed in this case a fraud of such a character as would not only justify, but would require the interposition of this court. The law on this subject is laid down in Marshall v. Holmes, 141 U. S. 590, 12 Sup. Ct. 64, 35 L. Ed. 870:

"A Circuit Court of the United States, in the exercise of its equity powers over the parties, and where diverse citizenship gives jurisdiction over the parties, may deprive a party of the benefit of a judgment fraudulently obtained by him in a state court, if the circumstances are such as would authorize relief by a federal court, if the judgment had been rendered by it and not by the state court, as a decree to that effect does not operate upon the state court, but upon the party."

When, then, will a federal court authorize relief of a judgment obtained in it? That is the test of the interference of this court with a judgment of a state court. In United States v. Throckmorton, 98 U. S., at page 65, 25 L. Ed. 93, Mr. Justice Miller states the general rule and the exceptions. Here is the general rule:

"If the court has been mistaken in the law, there is a remedy by writ of error. If the jury has been mistaken in the facts, the remedy is by motion for new trial. If there has been evidence discovered since the trial, a motion for a new trial will give appropriate relief. But all these are parts of the same proceeding, relief is given in the same suit, and the party is not vexed

by another suit for the same matter. So, in a suit in chancery, on proper showing a rehearing is granted. If new evidence is discovered after the decree has become final, a bill of review on that ground may be filed within the rules prescribed by law on that subject. Here, again, these proceedings are all part of the same suit, and the rule framed for the repose of society is not violated."

Then comes the exception, where, by reason of something done by the successful party to the suit, there was in fact no adversary trial or decision of the issues in the case; such as when the unsuccessful litigant has been prevented from fully showing his case by fraud or deception practiced on him by his opponent—as by keeping him away from court, or a false promise of a compromise; when he never had knowledge of the suit, when his attorney practiced fraud on him. These and similar cases which show that there has never been a real contest in the trial are reasons for which a new suit may be sustained to set aside and arrest the judgment and open the case for a new and fair hearing. The general rule is stated by that excellent justice as follows: "Relief has been granted on the ground that by some fraud practiced directly upon the party seeking relief against the judgment that party has been prevented from presenting all his case to the court." There is nothing in the affidavits at this hearing which sustains any such proposition. "On the other hand," says Justice Miller, "the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed." The doctrine in this case is affirmed in Vance v. Burbank, 101 U. S. 519, 25 L. Ed. 929; Steel v. Smelting Co., 106 U. S. 454, 1 Sup. Ct. 389, 27 L. Ed. 226; United States v. Beebe, 180 U. S. 351, 21 Sup. Ct. 371, 45 L. Ed. 563, and many other cases. Seeking to bring himself within these cases, the complainant claims that he has discovered a conspiracy between Willeford, his wife, and his daughter, Willie, to cheat and defraud the complainant, and he relies on this. But in the cases in the state court complainant always took the ground that the testimony of Willie Willeford was false and perjured, and he used the affidavit taken in Atlanta to show that she perjured herself at the trial at the instance and persuasion of her father, induced by his promise to give her one-half of his verdict, and that after that they had gone to trial. This testimony was certainly before the court when equitable relief was asked. So when he formally charges conspiracy, he only gives a name to a transaction of which he knew when he made his contest in the state court, and which was passed upon and decided in that court. The ground for the interference of this court set up in this bill is not extrinsic. It was in the subject of the litigation in the state court, was involved in the issues tried therein. "It is not sufficient ground for relief in equity against a judgment at law that the verdict was obtained by perjury, and the addition in a bill praying such relief of allegations of conspiracy and surprise does not make a case for interference in equity on the enforcement of the judgment." Cotzhausen v. Kerting (C. C.) 29 Fed. 821. There are four requisites for the interference of a court in granting a new trial on after dis-

covered evidence: (1) The evidence must have been discovered since the trial; (2) it must be evidence which could not have been discovered before trial by the exercise of reasonable diligence; (3) it must be material, and such as ought, on a new trial, to produce an opposite result on the merits; (4) it must not be merely cumulative, corroborative, collateral. 1 Black on Judgments, § 386. The evidence they propose is cumulative, corroborative, and collateral. ·

The complainant has not made out a case for the interference of this court. The motion for injunction is refused, and the restraining order is dissolved.

## On Rehearing.

### (December 21, 1903.)

The argument of the learned counsel for complainant upon his motion for a rehearing of this cause has been carefully considered. But the opinion heretofore filed has not been changed. The complainant in the state courts of North Carolina had full hearing upon a state of facts almost, if not altogether, similar to those before this court. He has used all the modes of relief the law of that state furnishes to litigants. He has entered an appeal from the last decision. Instead of prosecuting his appeal as instituted, he has come into this court. Practically the court is called upon to review and to set aside the proceedings of the North Carolina courts, and to enjoin a judgment of those courts in a cause in which the jurisdiction of the two courts are concerned. Comity, at least, we may almost say, properly forbids it.

The motion is refused.